UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS HARMON THOMAS,

    Plaintiff,

v.                                                                                                      Case No: 8:16-cv-3129-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

    Plaintiff, Thomas Harmon Thomas seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### A.    Procedural Background

    Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on September 24, 2012. (Tr. 33, 99.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 43, 518.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 605–643.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 21–32.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 8–17.) Plaintiff then timely filed a

complaint with this Court. (Dkt. 1). The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1962, claimed disability beginning on September 20, 2010, which was subsequently amended to April 7, 2012. (Tr. 21, 99–112, 195, 609.) Plaintiff has a limited education. (Tr. 26.) Plaintiff's past relevant work experience included work as a terra cotta mason, marble installer, and a mason supervisor. (Tr. 30, 134.) Plaintiff alleged disability due to diabetes, neuropathy, tendonitis, retinopathy, and cardiac issues. (Tr. 125.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 7, 2012, the alleged onset date. (Tr. 23.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: obesity, diabetes mellitus, type one with nephropathy, peripheral neuropathy and retinopathy, essential hypertension, and status post myocardial infarction with stent placement (Tr. 24.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with the following additional limitations:

> occasional balancing and climbing of ramps or stairs; no balancing on uneven terrain; no climbing of ladders, ropes, or scaffolds; no exposure to unprotected heights; limited to standing and walking in two hour segments for a total of 6 hours in an 8-hour workday; sitting unlimited; must avoid exposure to extreme hot temperatures; must avoid exposure to extreme industrial vibrations to all four extremities; near and far visual acuity limited to frequent; limited to frequent, as opposed to constant, field of vision; must avoid operating dangerous machinery or tools; no work involving tiny items such as screws or reading small print unless a magnifying glass is allowed; fine and gross manipulation is limited to frequent;

> feeling limited to frequent with the right hand; left upper extremity unlimited; and no driving motor vehicles at night.

(Tr. 25–26.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 30.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 30.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cafeteria attendant, an usher, and a ticket taker. (Tr. 31.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 31.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.

20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis,

mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in posing a hypothetical to the VE that did not include all of Plaintiff's limitations; (2) the ALJ violated Plaintiff's due process and administrative rights by failing to consider a report by Dr. Robert Shefsky; (3) the ALJ failed to resolve inconsistencies between the testimony of the VE and the Dictionary of Occupational Titles ("DOT"); and (4) the ALJ erred in the evaluation of Plaintiff's RFC. For the reasons that follow, none of these contentions warrant reversal.

**A.     The ALJ's Hypothetical to the VE**

Plaintiff's first contention is that the ALJ's hypothetical to the VE did not include a prohibition on balancing on uneven terrain, did not contain a limitation to occasional balancing in general, and arguably did not include a limitation to frequent left hand fine and gross manipulation. (Dkt. 19 at 12.) As part of his RFC determination, the ALJ limited Plaintiff to jobs requiring occasional balancing, no balancing on uneven terrain, and frequent fine and gross manipulation. (Tr. 25–26.) During the hearing, the ALJ posed the following hypothetical to the VE:

> Assume a hypothetical, closely approaching advanced age, individual with a limited education and past relevant work experience as the claimant had. Assuming he's limited to a wide range of light level of exertion, with limitations. As far as occasional climbing, balancing, and that's balancing on uneven terrain. . . . Assuming that fine and gross manipulation is limited to frequently, and the same with feeling, particularly with the right hand.

(Tr. 637–638.) The VE testified that an individual with Plaintiff's limitations could perform work as a cafeteria attendant, an usher, and a ticket taker. (Tr. 638–639.)

- 5 -

A claimant's RFC is "the most [claimant] can still do despite [claimant's] limitations" and is assessed "based on all the relevant evidence in [claimant's] case record." 20 C.F.R. § 404.1545(a)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). When the ALJ determines that a claimant cannot perform past relevant work, then the Commissioner must produce evidence that claimant is able to do other jobs existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). The burden then shifts to the claimant to show that the claimant "is unable to perform the jobs that the Commissioner lists." *Doughty v. Apfel*, 245 F.3d 1274, 1278, n.2 (11th Cir. 2001).

"[T]he Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a [vocational expert]." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ must "introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform" and a vocational expert's testimony constitutes substantial evidence when the ALJ poses a hypothetical question to the vocational expert "which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227. The ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. Further, an ALJ's hypothetical needs to include the claimant's impairments, "not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007).

Plaintiff argues that the ALJ could not properly rely on the VE's testimony because the ALJ's hypothetical question did not include Plaintiff's impairments related to balancing and manipulation of his left hand. Plaintiff contends that the only reference to balancing in the ALJ's hypothetical appears "to be a limitation to occasional balancing on uneven terrain, and no limit to

other balancing." (Dkt. 19 at 13.) Thus, Plaintiff argues that this does not include his limitations of occasional balancing in general and no balancing on uneven terrain. (Dkt. 19 at 14.) Upon review of the transcript, the hypothetical includes limitations in "balancing, and that's balancing on uneven terrain." (Tr. 637–638.) It is unclear from the VE's hypothetical whether the ALJ was referring to occasional balancing in general or occasional balancing on uneven terrain. The Commissioner argues that Plaintiff's representative explored the limitation of balancing on uneven surfaces with the vocational expert, who testified that with regard to performing a job as an usher, she did not consider the slanted surface in a theater an "uneven surface." (Tr. 640.) However, this does not address occasional balancing. Nonetheless, none of the three jobs testified to by the VE require balancing. According to the Dictionary of Occupational Titles ("DOT"), balancing is "not present" in performing a job as a cafeteria attendant, an usher, or a ticket taker. DICOT § 311.677-010, 1991 WL 672694; DICOT § 344.667-014, 1991 WL 672865; DICOT § 344.667-010, 1991 WL 672863. Thus, any error in the ALJ's hypothetical to the VE is harmless and does not warrant remand as whether Plaintiff is able to balance is not relevant to his performance of the jobs the VE testified Plaintiff can perform. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error harmless where the error did not affect the decision).

Plaintiff next argues that the ALJ's hypothetical to the VE was deficient because the ALJ stated that Plaintiff's use of his left hand was unlimited. (Dkt. 19 at 14.) Plaintiff argues that this does not include the ALJ's RFC assessment that Plaintiff's "fine and gross manipulation is limited to frequent" as to Plaintiff's left hand. (Dkt. 19 at 14.) However, this argument is without merit. In the hypothetical, the ALJ asked the VE to assume "that fine and gross manipulation is limited to frequently, and the same with feeling, particularly with the right hand." (Tr. 638.) The ALJ then confirms with Plaintiff that he is right-handed, and states "the right hand is the dominant

extremity. The left upper extremity, unlimited." (Tr. 638.) The ALJ's reference to "left upper extremity, unlimited" refers to feeling, not fine and gross manipulation. Moreover, the ALJ's hypothetical reflects the limitations in Plaintiff's RFC. The ALJ's RFC assessment specifically states "fine and gross manipulation is limited to frequent; feeling limited to frequent with the right hand; left upper extremity unlimited." (Tr. 26.) Therefore, Plaintiff's argument that the ALJ's hypothetical to the VE did not include all the limitations within Plaintiff's RFC does not warrant remand.

B. Dr. Shefsky's 2011 Report and Plaintiff's Due Process

Plaintiff next argues that the ALJ erred in failing to admit into evidence and consider the June 16, 2011 report of consultative examiner Dr. Robert Shefsky. (Dkt. 19 at 15.) Plaintiff argues that the ALJ was initially confused about whether the report was included in the record, then compared it to a subsequent report by Dr. Shefsky, but did not ultimately admit the 2011 report into evidence. (Dkt. 19 at 16–17.) Plaintiff submitted the report to the Appeals Council on November 17, 2015. (Tr. 557, 577.) Plaintiff argues that the report must be considered by the Court in reviewing the ALJ's decision. (Dkt. 19 at 17.) Plaintiff further contends that he had a right to submit evidence for the ALJ to consider, and in failing to admit the 2011 report into evidence, the ALJ violated Plaintiff's due process rights. (Dkt. 19 at 18.)

As stated by the Eleventh Circuit, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995); *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985). Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The

court should be guided by whether the record reveals evidentiary gaps which result in unfairness or "clear prejudice." *See Brown*, 44 F.3d at 934–35. Prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley*, 761 F.2d at 1540. Nevertheless, the plaintiff bears the burden of proving that he or she is disabled and is responsible for producing evidence to support his or her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).

Here, the ALJ admitted Dr. Shefsky's September 2013 report, but not the 2011 report. In the physical examination of his 2011 report, Dr. Shefsky stated that Plaintiff had a "shortened stride length," could not fully squat, and "[c]ould not walk on heels and toes without difficulty." (Tr. 567.) Dr. Shefsky further reported that Plaintiff's stance was normal and Plaintiff did not use an assistive device and "[n]eeded no help getting off [the] exam table." (Tr. 576.) Plaintiff asserts that this report is significant because Dr. Andrea Brand cited the report in her August 24, 2015 opinion that Plaintiff was not capable of standing and walking six to eight hours a day, five days a week, on or before June 12, 2015. (Tr. 583.) Dr. Brand cited Plaintiff's intermittent pain and burning in his feet as the reason for his inability to stand and walk. (Tr. 583.) However, Dr. Brand also cited to Dr. Shefsky's 2013 report. (Tr. 583.) The ALJ addressed Dr. Shefsky's 2013 report extensively and assigned it significant weight. (Tr. 27–29.) In reviewing Dr. Shefsky's 2013 report, Dr. Shefsky makes findings that are almost identical to those in his 2011 report. For example, in the 2013 report, Dr. Shefsky again noted Plaintiff's shortened stride length and that he could not fully squat and had difficulty walking on his heels and toes. (Tr. 423.) Dr. Shefsky also reported that Plaintiff's stance was normal, he did not use an assistive device, and he did not

need help getting off the exam table. (Tr. 423.) The ALJ specifically noted all of these observations in his decision. (Tr. 29.) Given the similarity in Dr. Shefsky's reports, it is unclear how any evidentiary gaps caused by the 2011 report's absence from the record resulted in clear prejudice that would warrant remand. *See Brown*, 44 F.3d at 934–35.

Further, as noted by the Commissioner, the Appeals Council considered Dr. Shefsky's 2011 report in its review of the ALJ's decision. In denying Plaintiff's request for review, the Appeals Council specifically considered the additional evidence and whether the ALJ's findings were contrary to the weight of the evidence. (Tr. 11–12.) The ALJ found that the "information does not provide a basis" for changing the ALJ's decision. (Tr. 12.) Additionally, as explained further below, the ALJ's decision was supported by substantial evidence. Therefore, Plaintiff fails to show prejudice warranting remand.

### C. The VE's Testimony and the DOT

Plaintiff next contends that the ALJ erred in failing to identify and resolve inconsistencies between the VE's testimony and the DOT. (Dkt. 19 at 18.) Specifically, Plaintiff argues that the ALJ's hypothetical includes a limitation to "no work involving . . . reading very small print without – unless magnifying glass is allowed." (Tr. 638.) Plaintiff contends that this limitation is inconsistent with performing a job as a ticket taker, whose job includes examining tickets to verify authenticity. (Dkt. 19 at 19.) Plaintiff asserts that tickets "are inherently small, and the size of the print identifying such elements as date issued is necessarily correspondingly small." (Dkt. 19 at 19.) Plaintiff makes a similar argument concerning the usher's responsibilities of reading tickets for seat locations. (Dkt. 19 at 19.) Plaintiff also argues that the VE did not explain how a cafeteria attendant can sit for two hours a day considering his or her primary duties include carrying trays and dishes and wiping and setting tables. (Dkt. 19 at 19.) Plaintiff asserts that pursuant to Social

Security Ruling ("SSR") 00-4p, "when conflict exists between a VE's testimony and the DOT, an ALJ must elicit a reasonable explanation for the conflict and his or her failure to do so can constitute reversible error." (Dkt. 19 at 20.)

In response, the Commissioner argues that Plaintiff is speculating and that Plaintiff's argument does not show a conflict between the VE's testimony and the DOT. (Dkt. 21 at 12.) The Court agrees. The DOT descriptions for the jobs of a ticket taker and an usher do not include a limitation that the jobs cannot be performed with the use of a magnifying glass. *See* DICOT § 344.667-014, 1991 WL 672865; DICOT § 344.667-010, 1991 WL 672863. Likewise, the DOT description for a cafeteria attendant does not include a limitation that he or she cannot sit for two hours a day. *See* DICOT § 311.677-010, 1991 WL 672694. Rather, the DOT description for a cafeteria attendant indicates that the physical demands are those of light work, meaning it requires (1) walking or standing to a significant degree or (2) sitting most of the time but entails pushing and/or pulling of arm or leg controls and/or (3) working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. *Id*. This description does not conflict with the ALJ's hypothetical and RFC limitation that Plaintiff is restricted to standing and walking in two hour segments for a total of six hours in an eight-hour workday.

The Court further notes that Plaintiff does not argue that the ALJ did not include Plaintiff's limitations regarding reading small print or sitting for two hours a day within the hypothetical to the VE. During the hearing, the ALJ clearly included these restrictions in the hypothetical. (Tr. 637–638.) The ALJ then inquired as to whether the VE's testimony was consistent with the DOT, and the VE confirmed that it was. (Tr. 639.) The ALJ relied on this testimony in determining the jobs Plaintiff is able to perform. (Tr. 31.) Thus, Plaintiff's contention does not warrant reversal.

*See Miller v. Comm'r of Soc. Sec.*, 246 Fed. App'x 660, 662 (11th Cir. 2007) ("even assuming that an inconsistency existed between the testimony of the vocational expert and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the vocational expert."); *Hobbs v. Colvin*, No. 8:13-CV-3233-T-24, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015) (finding the "ALJ was permitted to base his findings about [jobs the plaintiff is able to perform] on the VE's testimony"); *Brijbag v. Astrue*, No. 8:06-CV-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008) ("[T]he ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT.").

### D. Residual Functional Capacity

Plaintiff's final contention is that the ALJ's RFC assessment is not supported by substantial evidence. (Dkt. 19 at 21.) Specifically, Plaintiff argues that the ALJ erred in assessing Plaintiff's fine and gross manipulation, driving, and standing and walking. (Dkt. 19 at 21.)

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). As discussed previously, the RFC is defined as the most a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). Therefore, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See* 20 C.F.R. § 416.945(a)(3) (stating that all of the record evidence is considered in the RFC assessment). Further, while the

ALJ should consider medical opinions regarding a claimant's ability to work in forming the RFC, the medical opinions are distinct from the RFC assessment. *Id.* §§ 404.1527, 404.1545, 416.913(a), 416.927, 416.945.[1] Specifically, a claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

### 1. *Plaintiff's Fine and Gross Manipulation*

Plaintiff contends that the ALJ did not consider all of his limitations when determining Plaintiff's fine and gross manipulation. Plaintiff cites to Dr. Shefsky's 2013 report and Dr. Shefsky's comments that Plaintiff reported a decreased sensation to light touch on the fingertips of both hands, as well as Dr. Shefsky's findings that Plaintiff's right hand dexterity was not intact and he had difficulty with zippers, buttons, and tying. (Dkt. 19 at 22.) In the decision, the ALJ limited Plaintiff's RFC to frequent fine and gross manipulation. (Tr. 26.) The ALJ specifically addressed Dr. Shefsky's report, noting that while Dr. Shefsky found Plaintiff's dexterity was not intact on the right hand, his left hand dexterity remains intact. (Tr. 28, 425.) Further, as noted by the ALJ, Dr. Shefsky found no reduction in grip strength on the left hand and noted Plaintiff's grip strength as a four out of five on the right hand. (Tr. 28, 425.) The ALJ also relied on the opinion of Dr. Edmund Molis. (Tr. 29.) In November 2013, Dr. Molis opined that Plaintiff is limited to frequent handling, fingering, and feeling with the right hand, but is unlimited in the use of his left hand. (Tr. 29, 450.) The ALJ afforded Dr. Molis' opinion significant weight in forming Plaintiff's RFC. (Tr. 29.) Therefore, the ALJ's findings are supported by substantial evidence.

Plaintiff also cites to the September 2015 opinion of Dr. Grindal, who noted that Plaintiff's hands were "somewhat contracted" and "[h]e has very limited movement and weakness of all

---

[1] For claims filed before March 27, 2017, including Plaintiff's claim, the rules in 20 C.F.R. §§ 404.1527, 416.927 apply.

intrinsic muscles." (Tr. 599.) Plaintiff further notes his diagnosis of right hand tendonitis and a referral to an orthopedist in April 2013. (Tr. 387.) The orthopedist found that Plaintiff has stenosing tenostynovitis and recommended surgery. (Tr. 347.) Plaintiff argues that the ALJ did not consider this impairment and the effect it has on "Plaintiff's ability to grip in combination with his peripheral neuropathy." (Dkt. 19 at 23.) However, to the extent that Plaintiff points to other evidence which would undermine the ALJ's RFC determination, his contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth*, 703 F.2d at 1239). This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Plaintiff also addresses the ALJ's statement that Plaintiff helps with the laundry, which Plaintiff believes is inconsistent with his testimony. (Dkt. 19 at 22.) In the decision, the ALJ wrote that during the hearing, Plaintiff testified "he throws laundry into the washing machine" and "that he helps with the laundry." (Tr. 24, 26.) Plaintiff argues that he testified to serious limitations when doing the laundry, including that while he can throw laundry in, "it's like a scavenger hunt trying to get it into the dryer" because he lacks sensitivity in his hands. (Tr. 627.) The ALJ's statement that Plaintiff helps with the laundry does not conflict with Plaintiff's testimony. Further, the ALJ found Plaintiff's testimony regarding his manipulative limitations "partially credible." (Tr. 28.) Plaintiff does not contend that the ALJ erred in the credibility determination, and Plaintiff offers no arguments concerning how this issue pertains to his issues on appeal. As such, to the

extent Plaintiff is attempting to challenge the ALJ's credibility determination, Plaintiff's statement is insufficient to raise this issue for appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

### 2. *Plaintiff's Ability to Drive*

Plaintiff next contends that the RFC assessment fails to properly address his inability to drive because the ALJ only restricted Plaintiff to driving during the day. (Dkt. 19 at 24.) In support of his argument, Plaintiff relies on his testimony during the hearing. Specifically, Plaintiff testified that he "got in a couple of car accidents, and in company trucks" because his eyes are too sensitive to the sun, "the light sensitivity is unbearable sometimes," and he does not drive at night. (Tr. 617, 623, 628.) Plaintiff further testified that he cannot grip the wheel anymore, nor drive manual vehicles as he is unable to feel the gas pedal, clutch, and brake accurately. (Tr. 628.) Plaintiff does not cite to any medical record or opinion in support of his argument.

In the ALJ's opinion, the ALJ noted Plaintiff's alleged limitations in driving, but also cited Plaintiff's testimony that he drives himself to doctor appointments and is able to drive approximately seven miles. (Tr. 24, 27, 612.) As noted above, the ALJ's assessment of Plaintiff's ability to grip is supported by substantial evidence. *See supra* Section D(1). In assessing Plaintiff's visual limitations, the ALJ viewed Plaintiff's testimony as "generally credible" as it aligns with the medical evidence. (Tr. 28.) The ALJ cited to Dr. Shefsky's 2013 report and his findings that Plaintiff had 20/70 vision without corrective lenses. (Tr. 28, 423.) In November 2013, Dr. Molis

opined that Plaintiff had a limited field of vision, but unlimited near acuity, far acuity, depth perception, accommodation, and color vision. (Tr. 450.) Thus, the record supports the ALJ's conclusion that Plaintiff is able to drive during the day.

Further, none of the three jobs that the ALJ found Plaintiff is able to perform require driving. *See* DICOT § 311.677-010, 1991 WL 672694; DICOT § 344.667-014, 1991 WL 672865; DICOT § 344.667-010, 1991 WL 672863. Accordingly, any error in the ALJ's assessment that Plaintiff is able to drive during the day is harmless and does not warrant remand as Plaintiff's ability to drive is immaterial. *See Diorio*, 721 F.2d at 728 (11th Cir. 1983) (finding ALJ error harmless where the error did not affect the decision).

3. *Plaintiff's Ability to Stand and Walk*

In his last argument, Plaintiff contends that the ALJ's RFC assessment fails to properly address his inability to stand and walk. Plaintiff argues that the ALJ erred as "Plaintiff's capacity for standing and walking is more severely limited than assigned by the ALJ based on Plaintiff's combined severe impairments." (Dkt. 19 at 24.) Plaintiff relies on physicians Dr. Myron Bernstein and Dr. Andrea Brand, both of whom concluded that Plaintiff's limitations in standing and walking existed prior to the ALJ's decision. (Dkt. 19 at 25.) In their reports, Dr. Bernstein and Dr. Brand opined that Plaintiff was not able to stand and walk six to eight hours per day, five days per week. (Tr. 582–583.) Dr. Bernstein specified that he believed Plaintiff's disability was due to his advanced neuropathy and a history of plantar ulcerations, and Dr. Brand cited to Plaintiff's intermittent pain and burning in his feet. (Tr. 582–583.) Plaintiff also relies on a May 2015 record from Dr. Clayton Bredlau. (Dkt. 19 at 25.) Dr. Bredlau noted that Plaintiff could not walk on a treadmill due to pain. (Tr. 585.)

In the RFC determination, the ALJ limited Plaintiff to standing and walking in two hour segments for a total of six hours in an eight-hour workday. (Tr. 25.) In reaching this decision, the ALJ noted Plaintiff's testimony that he could stand for approximately one hour at a time and walk a distance of "a couple city blocks at one time." (Tr. 27.) The ALJ also referenced Plaintiff's treatment notes, which contain "extensive complaints of peripheral neuropathy afflicting the claimant's lower extremities." (Tr. 27.) However, the ALJ found that Plaintiff's treatment notes do not contain specific findings regarding his ability to stand and walk that reflect his subject complaints. (Tr. 27.) The ALJ noted that after the hearing, Plaintiff stood up and walked out of the hearing room without an assistive device and only a slight limp. (Tr. 27.) The ALJ also relied on the reports of Dr. Shefsky and Dr. Molis in making his RFC determination. (Tr. 27, 29.)

As previously mentioned, in his 2013 report, Dr. Shefsky noted that Plaintiff is able to walk with a shortened stride length and that he could not fully squat and had difficulty walking on his heels and toes. (Tr. 423.) Dr. Shefsky also reported that Plaintiff's stance was normal, he did not use an assistive device, and he did not need help getting off the exam table. (Tr. 423.) Additionally, Dr. Molis opined that Plaintiff is able to stand and/or walk (with normal breaks) for six hours in an eight-hour workday, an opinion which the ALJ assigned significant weight. (Tr. 29, 448.) Thus, the ALJ's findings were supported by the record.

Further, Plaintiff again appears to be requesting the Court to re-weigh the evidence. However, the Court is precluded from re-weighing the evidence and must defer to the ALJ's decision if it is supported by substantial evidence. *Moore*, 405 F.3d at 1213; *Dyer*, 395 F.3d at 1210. "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211. Here, Dr. Shefsky's and Dr. Molis' reports adequately support the ALJ's conclusion. Therefore,

the ALJ's RFC assessment for Plaintiff's ability to stand and walk is supported by substantial evidence, and Plaintiff's final contention does not warrant remand.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on December 11, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record